GLOBE & RUTGERS FIRE INS. CO. OF NEW YORK v. EUREKA SAWMILL CO.

1 Div. 768.

Supreme Court of Alabama.

Dec. 21, 1933.

Rehearing Denied Jan. 18, 1934.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Robt. H. Smith, of Mobile, for appellee.

whereby the defendant insured, or contracted to insure, the plaintiff against loss by fire, of certain designated property, the insurance to be effective from noon September 30, 1931. The particular provision of the contract in this respect is alleged in the complaint to be: "And it was further orally agreed between said plaintiff and the said B. F. Adams and Company, as the general agents for the defendant, that the policy of insurance of the National Fire and Marine Insurance Company of New Jersey would be void at the expiration of said policy No. 4,750,307, of defendant because of the failure to carry at least ten thousand dollars of insurance with the Globe and Rutgers Fire Insurance Company of New York, and that the said B. F. Adams and Company, as general agents for the defendant, would bind defendant for the same amount of insurance as was then covered by said policy of National Fire and Marine Insurance Company of New Jersey, which was $4,098.79, until the said National Fire and Marine Insurance Company should decide whether it would take the risk, and that the said agents, as the agents for defendant, would do whatever was necessary to protect by insurance the property so to be insured, by insurance to the extent of the policy of the National Fire and Marine Insurance Company, until the National Fire and Marine Insurance Company should decide whether it would insure the property for said amount, and if the National Fire and Marine Insurance Company did not accept said insurance, then a policy would be issued by defendant for said amount, but that the defendant would be bound in the meantime for said insurance. * * *"

The complaint in each count contained the averment that certain designated portions of the insured property were destroyed, and other parts damaged, by fire on the after noon of September 30, 1931.

In the second count of the complaint (there being no count 1) the defendant's breach of the contract is averred in the following terms: "Defendant failed and refused to pay plaintiff any money for the loss and damage by fire of its properties so injured and destroyed. to its damages aforesaid."

The fifth count of the complaint, as last amended, alleges the defendant's breach in the following language: "And plaintiff further alleges that defendant failed to bind the defendant to insure the property of plaintiff described in items one to nine, both inclusive, as described in the policy of insurance, a copy of which is hereto attached marked exhibit 'A,' for the amount of insurance that was covered by said policy of National Fire and Marine Insurance Company of New Jersey, to its damages aforesaid."

The fourth count, as last amended, avers the breach by defendant of the contract in the following words: "And plaintiff further

**KNIGHT, Justice.**

The appeal in this case is prosecuted by the defendant, appellant here, from a judgment of the circuit court, awarding the plaintiff, appellee, damages in the matter of the destruction, by fire, of certain of plaintiff's property. It is the contention of the plaintiff that on the 21st day of September, 1931, it entered into a valid and enforceable oral contract of insurance with the defendant, the latter acting through its general agents,

670

alleges that the defendant failed to do those things that were necessary to protect by insurance the property of the plaintiff described in items one to nine, both inclusive, as described in the policy of insurance, a copy of which is hereto attached and marked as exhibit 'A,' to the extent of the policy of the National Fire and Marine Insurance Company until the National Fire and Marine Insurance Company should decide whether it would insure said property for said sum of $4,698.79."

To the complaint and its several counts, separately and severally, the defendant demurred, assigning thereto one hundred and sixty-two separate grounds, covering eight pages of the transcript.

One ground of demurrer interposed, we think, was well taken to each count of the complaint, as we shall hereafter in this opinion undertake to demonstrate.

■ In this state it has long been recognized that a verbal contract of insurance, as well as a verbal contract to insure, can be made, and will be enforced, when and if all the terms of the contract are agreed upon. This right existed at common law and has not been changed by statute. The rate of premium, duration of the policy, nature of the risk, the property, and location of the same, as well as the amount of insurance must be agreed upon. When the minds of the contracting parties reach such an agreement, a valid contract of insurance has been made and may be enforced. Mobile Marine Dock & Mutual Ins. Co. v. McMillan & Son, 31 Ala. 711; Liverpool & London & Globe Ins., Ltd., v. McCree, 210 Ala. 559, 98 So. 880; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; Royal Exch. Assur. of London v. Almon, 202 Ala. 374, 376, 80 So. 456; Insurance Co. of North America v. Williams, 200 Ala. 681, 687, 688, 77 So. 159; Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143; Hartford Fire Ins. Co. v. King, 106 Ala. 519, 17 So. 707; Home Ins. Co. v. Adler, 77 Ala. 242; Id., 71 Ala. 516; Alabama Gold Life Ins. Co. v. Mayes, 61 Ala. 163; Commercial Fire Ins. Co. v. Morris & Co., 105 Ala. 498, 506, 18 So. 34, 36; 26 C. J. 43; 14 R. C. L. page 879.

And in the case of Commercial Fire Ins. Co. v. Morris, 105 Ala. 506, 18 So. 34, it was held that, where there existed a contract of insurance, not then expired, and there is an agreement between the parties to renew the policy, and no change is suggested or agreed upon, it will be implied that the renewal contract included and adopts all the provisions of the existing contract of insurance. That such a contract is complete in all respects, and upon the failure to comply with the agreement, the party offending may be compelled, by bill in equity, specifically to perform the agreement, or held liable in a court of law for damages, resulting from a breach of the agreement. This holding is abundantly supported by the authorities.

In the case of Home Ins. Co. v. Adler, 71 Ala. 516, Judge Stone, in discussing the facts of that case, which were relied upon by the plaintiff to show that there was a valid verbal agreement of insurance, observed: "The conversation alleged to have taken place between Adler [the insured] and Kayser [who was the agent], about October 20, 1878, would not, unaided, amount to a valid contract of insurance, or agreement to insure. It wanted very many essential details. There was no mention of the place or house in which the goods were to be insured, of the rate of premium, or where to be paid, or of the duration of the policy, or of many other stipulations and details found in such policies. Looking alone to that conversation, we can not affirm all the terms necessary to consummate such contract were agreed upon. But the parties had had previous dealings in relation to a subject-matter identical in principle. Those dealings showed in what place and house the merchandise was kept, which was covered by the former policies, the rate of premium paid, or to be paid, the length of time—one year—the policy would run, and the many specifications and details embodied in the policies. They also tended to show that in prior dealings between these parties, pre-payment of premium had not been exacted. Proof of these previous dealings would authorize the inference that when Adler requested insurance, and Kayser agreed to issue the policy early in November, all the previous terms were impliedly understood and adopted, except to the extent they expressed and agreed otherwise. *The former policies were clearly admissible in evidence.* Harkins v. Pope, 10 Ala. 493; Crommelin v. Thiess, 31 Ala. 412, 70 Am. Dec. 499; Rainey v. Capps, 22 Ala. 288; Wolffe v. Wolff, 69 Ala. 549, 44 Am. Rep. 526." (Italics supplied.)

The fact must not be lost sight of that, in making the above observation, the learned justice was dealing exclusively with the evidence in the case, and not with the pleadings.

■■ One objection raised by the demurrer against the sufficiency of each of the counts is that it is not averred that the contract for the insurance was supported by a consideration paid, or agreed to be paid by the insured. Confessedly, if there was a contract of insurance made between the parties, as the plaintiff alleges, to become effective at noon on September 30, 1931, that contract rested wholly in parol. There was no written memorial of the agreement. None of the counts averred, in terms, that the contract, whereby the defendant bound itself to pay any loss that might result, was supported by a consideration paid, or to be paid. If there was, in fact, any agreement or obligation on the part of the plaintiff to pay for the interim insurance, it rested wholly in inference.

Section 7662 of the Code provides: "Every written contract, the foundation of the suit, purporting to be executed by the party sought to be charged, his partner, agent or attorney in fact, is evidence of the existence of the debt, or that the party undertook to perform the duty for which it was given, and that it was made on sufficient consideration; but may be impeached by plea, and, when so impeached, the burden of proof is on the defendant."

The contract being in writing is made by this section of the Code to import a consideration, and obviates the necessity of averring the consideration in declaration based and framed on writings of the class to which it applies. Thompson v. Hall, 16 Ala. 204; Bolling v. Munchus, 65 Ala. 558; Georgia Home Ins. Co. v. Boykin, 137 Ala. 350, 367, 34 So. 1012.

The burden was upon the plaintiff to show by his pleading that the parol contract, upon which he based his action, was supported by a consideration, and, likewise, to sustain the averment by the evidence to the reasonable satisfaction of the jury. Liverpool & London & Globe Ins. Co., Ltd., v. McCree, supra.

Has the plaintiff met this burden of averment in any one of the counts of the complaint? We think not. True, each of the counts contains inferences to that end, but facts made to rest solely upon inference do not meet the rule of good pleadings. The fact or facts necessary to disclose a good cause of action must be pleaded, and not left to rest upon inference. H. M. Price Hdwe. Co. v. Meyer et al., 224 Ala. 35, 138 So. 543; Duckworth v. Duckworth's Adm'r, 35 Ala. 70; Savannah & Memphis R. Co. v. Lancaster et al., 62 Ala. 555, 562; Tutwiler v. Dugger, 127 Ala. 191, 28 So. 677. We are at the conclusion that each of the counts was defective in not averring that said contract was supported by a consideration paid or to be paid, and what it was; and each was, therefore, subject to the ground of demurrer pointing out this omission. The court erred in overruling the demurrer to the several counts.

By this holding we must not be understood as intimating that the facts appearing in evidence would not authorize a jury to infer therefrom that there was a consideration, in fact, for the contract. The facts of this case are somewhat similar to the facts appearing in the report of the case of Home Ins. Co. v. Adler, 71 Ala. 516. In that case, this court, in effect, held the case was one for the jury.

It is also insisted that the several counts do not sufficiently show by their averments that the said agents, B. F. Adams & Co., in making the alleged contract, were acting within the line and scope of their employment, or that they were duly authorized to enter into said agreement on behalf of the defendant, citing in support of its contention Han-

over Fire Ins. Co. v. Wood, 209 Ala. 380, 96 So. 250, and London & Lancashire Ins. Co. v. McWilliams, 215 Ala. 481, 110 So. 909.

We are free to confess that the several counts in this particular could have been made more certain and definite, but, as the case must be reversed for the errors above pointed out, this defect, if a defect, will no doubt receive the attention of plaintiff's counsel upon another trial.

It is also further insisted that the several counts do not show a cause of action against the defendant, the insistence being that an action for the breach of a verbal contract to insure must be brought against the agent and not against the principal. We do not assent to this proposition, but hold that, if the contract was, in fact, made by the insurance company, acting at the time by and through its duly authorized agent, an action would lie against the company for any damages occasioned by, or resulting from, such breach.

The appellant in this last-mentioned contention cites the cases of Royal Exchange Assur. of London v. Almon, 202 Ala. 374, 80 So. 456, 458, and Cherokee Life Ins. Co. v. Brannum, 203 Ala. 148, 82 So. 175. There is nothing in these cases to sustain appellant in this contention. The effect of those cases was to hold that, if an agent promised to insure, and breached that promise, the action would lie against the agent of the defendant. But where the obligation to insure is the undertaking of the company, made by a duly authorized agent, for the breach of the right, action would, of course, be against the principal, and not against the agent. There is no merit in this contention of the appellant.

Count 5, as last amended, is also subject to the criticism leveled against it, as the breach assigned is vague and entirely too indefinite to meet the requirements of good pleading. The breach alleged is: "Defendant failed to bind the defendant to insure the property."

Count 4, as last amended, is also defective, in another particular, viz., in failing to allege what acts the defendant agreed to do to protect the property, and then failed to do.

The appellant insists that under the evidence in the case it was due the affirmative charge. We cannot agree with appellant in this insistence. We think the evidence was sufficient to carry the case to the jury.

The insistence that it was due the affirmative charge, upon the theory that the said B. F. Adams & Co. were not such general agents of the defendant, in the territory where plaintiff's property was located, as to bind the defendant by their acts, cannot be sustained. Although the written authority to said agents would appear to limit their

operations to Mobile, Ala., yet there was evidence in the case tending to show that the said B. F. Adams & Co., for a number of years next prior to the time they undertook to bind the defendant by the alleged contract sued on, had, as general agents of defendant, written insurance for the defendant company upon properties of the plaintiff situated elsewhere than in Mobile, and in fact, at the time the alleged contract was made, the defendant company had insurance upon this identical property located at the same place, written by these same agents, all to the knowledge of the defendant; in fact, this company had paid a small loss on the then existing contract of insurance with the defendant.

The evidence was sufficient to carry the case on this particular issue to the jury. The jury would be authorized to infer that the defendant had, by its course of dealing, given its consent for the said agents to solicit and make insurance contracts for it, outside of Mobile and in the territory where plaintiff's property was located. In this particular the evidence is without any sort of conflict.

■■ It is next insisted that the contract, upon which the present suit was brought, was not made by the general agents (B. F. Adams & Co.), but by B. F. Adams, Jr., who assumed to act for B. F. Adams & Co. However, the evidence shows, without conflict, that these acts were by and with the knowledge, consent, and direction, we may say, of B. F. Adams & Co. B. F. Adams, Sr., did business under the name of B. F. Adams & Co. The father was somewhat infirm and had appointed his son to represent him, and act for him, in these matters. The father represented many companies, and did a very large and extensive insurance business—in the neighborhood of a quarter of a million of dollars in premiums per year. It was open to the jury to find that it was necessary that he should have assistants or subagents. And it has been held, as a general principle, that, where subagents are necessary to the proper transaction and carrying on of the business committed to the agent, the latter has implied authority to appoint subagents. Insurance Co. of North America v. Thornton et al., 130 Ala. 222, 30 So. 614, 55 L. R. A. 547, 89 Am. St. Rep. 30; Bodine v. Ins. Co., 51 N. Y. 117, 10 Am. Rep. 566.

Besides, there was evidence tending to show that the terms of the alleged contract of insurance sued on were at the time fully made known to, and fully sanctioned by, the said B. F. Adams & Co. Defendant was not due the general charge on the theory that the contract was made with B. F. Adams, Jr., and not with B. F. Adams & Co., as general agents of the defendant.

As above stated, the defendant was not entitled to the affirmative charge in its behalf upon any theory advanced in argument by his counsel in this court. The issues were for the jury. Nor do we find any error in any of the rulings of the court in the matter of the refusal of any charges requested by the defendant.

■ It is next insisted that the court committed error to reversal in giving at the request of plaintiff charge numbered 1 in the record. We think this charge correctly stated the law. Home Ins. Co. v. Adler, supra (first report).

We have examined and carefully considered each ruling of the court upon admission and exclusion of evidence, and find no reversible error.

Having reached the conclusion that the judgment must be reversed for erroneous rulings on the pleadings, it is unnecessary to consider the motion made for a new trial.

For the errors pointed out in overruling the demurrer of the defendant to the several counts of the complaint, judgment of the court must be, and is, reversed.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.