SCOTT ET AL. *v.* FEDERAL LAND BANK OF LOUISVILLE, KENTUCKY.

[No. 13,879. Filed February 27, 1931.]

*Hugh D. Wickens,* for appellants.

*Tremain & Turner* and *W. T. Kannard,* for appellee.

CURTIS, J.—Appellee, The Federal Land Bank of Louisville, brought this action against Charles B. Ernestes, Gertrude M. Ernestes, his wife, James D. Scott and Olive J. Scott, his wife, Andrew Hahn and Charles D. Glick to foreclose a mortgage on certain real estate situ-

ated in Decatur County. The complaint also asked for a personal judgment against the defendants. It also averred that Olive J. Scott had no interest in the real estate in question. James D. Scott demurred to the complaint on the ground that neither the complaint nor the exhibit filed therewith contained a promise or contract by him (Scott) to pay the indebtedness sued on, but that such was only a recital of some past assumption of such indebtedness. The demurrer being overruled, James D. Scott filed answer in general denial, payment and no consideration. To this appellee filed reply in denial. Olive J. Scott filed an answer of general denial to the complaint and also filed a cross-complaint in two paragraphs, in which she alleged that, by virtue of the purchase at a delinquent tax sale of two portions of the real estate in question by her husband, James D. Scott, and his assignment to her of the certificates so issued to him, for which she was later given a tax deed, she held a lien upon such real estate in question, and asked that such be foreclosed. To this cross-complaint, appellee filed an answer alleging that, at and prior to the time James D. Scott purchased such real estate at the tax sale, and, at the time he assigned the tax certificates to Olive J. Scott, his wife, he was the owner of such real estate by virtue of a sheriff's certificate issued to him by the sheriff of Decatur County, upon a foreclosure by himself of a mortgage against said real estate and a sheriff's deed thereunder; that there was no consideration for the assignments; that the tax liens were merged in the foreclosure suit of James D. Scott; that all of such facts were well known to Olive J. Scott. Olive J. Scott, appellant, filed a general denial to the answer to her cross-complaint.

The court found for appellee on its complaint, against Olive J. Scott on her cross-complaint, and that Andrew Hahn and Charles D. Glick had no interest in the real

estate in question. Judgment was rendered against Charles B. Ernestes, Gertrude M. Ernestes and James D. Scott in the amount of $5,894.96. The mortgage was ordered foreclosed and adjudged to be a first lien upon the real estate. From this judgment, James D. Scott and Olive J. Scott, appellants herein, appealed.

The salient facts as disclosed by the evidence are: On November 7, 1919, appellee loaned to Ernestes and wife $6,000, and, as evidence of such loan, Ernestes and wife executed and delivered to appellee their promissory note in the amount of $6,000, payable in 68 semiannual installments, the last thereof to become due August 1, 1954. To secure the payment of such note, Charles B. and Gertrude M. Ernestes executed and delivered to appellee a certain mortgage deed, which was duly recorded. The mortgage deed provided that, in case any of the semiannual payments became delinquent, appellee should have the right to declare the entire debt due and payable and also the right to foreclose the mortgage. The installment due and payable February 1, 1928 was defaulted and not paid. On February 9, 1925, James D. Scott purchased two separate portions of the real estate in question at a delinquent-tax sale and was thereafter issued certificates of purchase, which he assigned to his wife, Olive J. Scott. On February 9, 1928, a tax deed was issued to Olive J. Scott for the land in question, and such tax deed was duly recorded. On July 6, 1925, James D. Scott purchased the lands in question at a sheriff's sale, and, on July 8, 1926, Scott received a deed from the sheriff of Decatur County to such lands.

On August 20, 1925, James D. Scott executed and delivered to appellee the following instrument: "This is to certify that I (or we), for the sum of valuable considerations and one Dollar, have purchased the entire tract of land which was mortgaged to you by Charles B. Ernestes to secure a loan from you in the sum of six

thousand dollars, and I (or we) have assumed the payment of said indebtedness and have purchased the original shares of stock held by the vendor in the Agricultural National Farm Loan Association, and have assumed all the liabilities of membership thereunder." This instrument was made a part of the complaint and identified therein as Exhibit 1, and is the same instrument that is also referred to herein as "appellee's Exhibit 3."

The errors assigned in this court by James D. Scott are: (1) The court erred in overruling his demurrer to the complaint; (2) the court erred in overruling his motion for a new trial. Under the motion for a new trial, he attacks the sufficiency of the evidence and also says the finding of the court is contrary to law. The same question arises upon each of these assignments, and they are, therefore, considered together.

It is admitted by appellee that there was nothing in the sheriff's deed to appellant whereby he assumed and agreed to pay appellee's mortgage. If, therefore, the written instrument filed with the complaint as Exhibit 1, which is also appellee's Exhibit 3 in the bill of exceptions, is not sufficient to create a personal liability of appellant James D. Scott to pay appellee's mortgage, then the lower court should have sustained the demurrer and this cause would have to be reversed as to appellant James D. Scott. We think the written instrument is sufficient to create such a liability on the part of James D. Scott.

The exhibit in question having been made and executed by appellant James D. Scott, pursuant to a federal statute (title 12 [USCA] Banks and Banking, Ch. 7) requiring the things therein mentioned to be done before Scott was entitled to a loan, is clearly executed pursuant to the federal law and not with reference to any state law. Where the subject-matter

of a contract is exclusively one of national cognizance, and Congress has enacted a law for the complete regulation of such contracts, the parties will be presumed to have contracted with reference to the act of Congress and its effect on the subject-matter, and not with reference to the state law. *Missouri, etc., R. Co.* v. *Walston* (1913), 37 Okla. 517, 133 Pac. 42.

The act of Congress (July 17, 1916, ch. 245, §8, 39 Stat. at L. 368, 12 USCA §733), creating the federal land banks and the National Farm Loan Association provides: "No persons but borrowers on farm land mortgages shall be members or shareholders of the national farm loan associations. Any person desiring to borrow on farm land mortgage through a national farm loan association shall make application for membership and subscribe for shares of stock, in such farm loan association to an amount equal to five per centum of the face of the desired loan, said subscription to be paid in cash upon the granting of the loan. If the application for membership is accepted and the loan is granted, the applicant shall, upon the full payment therefor, become the owner of one share of capital stock in said loan association for each $100 of the face of his loan. Said capital stock shall be paid off at par and retired upon full payment of said loan. Said capital stock shall be held by said association as collateral security for the payment of said loan, but said borrower shall be paid any dividends accruing and payable on said capital stock while it is outstanding."

The undisputed facts of the record show that the appellee is and was the holder of the first mortgage lien on the real estate involved, which mortgage was executed by one Ernestes; that Ernestes executed a second mortgage to appellant James D. Scott; that James D. Scott foreclosed his second mortgage without making appellee a party to such foreclosure proceeding; that James D.

Scott purchased all of the real estate in question at a sheriff's sale and became the owner thereof; that, after he became the owner of the same, he made and executed said Exhibit No. 1. The exhibit is in conformity with the Federal Farm Loan Act, and recites that appellant had purchased the entire tract of land mortgaged by Charles B. Ernestes to secure a loan of $6,000, and says: "And I have assumed the payment of said indebtedness and have purchased the original shares of stock held by the vendor in the Agricultural National Farm Loan Association and have assumed all the liabilities of membership thereunder." The exhibit is signed by appellant James D. Scott. The original borrower, Charles B. Ernestes, certifies to the truth of the statement, and authorizes the secretary-treasurer to transfer the original shares of stock to Scott. Then the exhibit contains the certificate of Frank C. Beall, president, and Louis Miller, secretary-treasurer, to the effect that James D. Scott had been duly elected to membership in the Agricultural National Farm Loan Association. A part of said exhibit contains this statement: "Loan cannot be transferred unless entire farm covered by the loan is sold to party seeking to assume loan. . . . The stock interest of the vendor must be transferred to the purchaser."

From the foregoing facts and the federal statutory provisions, it is clear that appellant James D. Scott could not become a member of the Agricultural National Farm Loan Association until he assumed the payment of the debt of Ernestes. It is also clear that appellant Scott executed said exhibit for the purpose of inducing appellee to permit appellant to continue the $6,000 loan made by appellee to Ernestes and also to transfer to appellant Scott said stock in the Agricultural National Farm Loan Association of the par value of $300, which stock was held by appellee as collateral security, after having been assigned to appellant Scott, all as provided by statute.

The extension of the $6,000 loan to appellant Scott, his election to membership in the Agricultural National Farm Loan Association, and the transfer to him of stock in the association of the par value of $300, all constituted a good and sufficient present consideration for the assumption by him of the payment of appellee's claim. It will be observed that appellee's action of foreclosure herein is not only based on the note and mortgage executed by Ernestes and wife, but the foregoing exhibit executed by appellant Scott is made a part of the complaint, and, upon the strength of it, the lower court was asked to and did render personal judgment against appellant James D. Scott as well as against Ernestes and wife. "The fact that the consideration is expressed in a written contract in the past tense does not necessarily show that it is a past consideration." 13 C. J. (Contracts) p. 365, §236. The foregoing quotation is from the text of Corpus Juris. Applying the principle announced to the facts herein and to the federal statute, there can be no doubt that the lower court did not err in rendering personal judgment against James D. Scott, and that there was a present consideration for the execution of said exhibit.

The conclusions above set forth, fully answer the contentions of appellant pointed out under his points 1 to 4.

Under point 5, appellant says: "The agreement to do what one is already legally bound to do, or to consent to the doing of that to which one has no legal right to object, is no consideration." It is plain, under the federal statutes above cited, that appellee and the Agricultural National Farm Loan Association were not legally bound to transfer the stock in the association to Scott unless he subscribed to the law, rules and regulations, and was elected to membership therein and assumed the appellee's debt. What appellant says under point 6 concerning corporations does not apply here.

Of course, the land bank could not prevent the sale of the mortgagor's equity of redemption, but it could not be compelled to transfer the stock in the association to Scott until he complied with the law requiring him to assume appellee's indebtedness, and other requirements, before the stock was transfered to him. This statement applies with equal force to appellant's points 7, 8 and 9. Upon the foregoing consideration, it seems clear that there was a legal and valid consideration passing from appellee to James D. Scott for the execution of appellee's Exhibit 3, and that the trial court did not err in overruling the demurrer to the complaint and in rendering a personal judgment against James D. Scott.

Olive J. Scott assigns as error in this court the overruling of her motion for a new trial, under which she contends: (a) the finding of the court is not sustained by sufficient evidence; and (b) the finding is contrary to law.

The mortgaged property was sold February 9, 1925, for taxes for the years 1923, 1924 and 1925. At this sale, James D. Scott, appellant and husband of Olive J. Scott, was the purchaser. He received the usual tax certificates, the land having been sold in two separate parcels. These certificates he assigned to his wife, Olive J. Scott. The assignments bear date of February 9 and 10, 1925, respectively, but neither of them was acknowledged by James D. Scott until February 8, 1928, at which time, they were each acknowledged before the county auditor of Decatur County. The evidence is undisputed that the wife paid the husband nothing for said assignments. Acts 1919, ch. 59, §268, §14309 Burns 1926, provides, among other things, as follows: "Such certificate shall be assignable, but no assignment therefor shall be valid unless indorsed on such certificate and acknowledged before some officer

authorized to take acknowledgments of deeds, or the proper county auditor or recorder in his office, for which record, said auditor shall be entitled to a fee of twenty-five cents, to be paid by the purchaser and treated as a part of the costs of the sale." The assignments in question were not valid, therefore, until acknowledged as above provided.

When appellant James D. Scott purchased the real estate at delinquent-tax sale on February 9, 1925, for taxes for the years 1923, 1924 and 1925, and paid the same at that time, the effect was to satisfy all taxes due and payable until May, 1927, for the obvious reason that the 1925 taxes were not payable until May and November, 1926. Appellant James D. Scott was entitled to the sheriff's deed July 6, 1926, and actually did receive same two days later. Therefore, James D. Scott was the owner when the 1925 taxes were due and payable in 1926. He did not assign the tax certificates to his wife until February 8, 1928, when he acknowledged them before the county auditor. Stating the proposition differently, he was the owner of the real estate by virtue of the purchase of the same at sheriff's sale July 6, 1925, entitled to his deed July 6, 1926, actually received sheriff's deed July 8, 1926, and, during all of that time, continued to hold his tax certificates and did not attempt to make any legal assignments thereof to his wife until February 8, 1928. He was attempting to hold separately his legal title acquired by virtue of the sheriff's deed and his tax-lien title acquired by virtue of the purchase at delinquent-tax sale; and, after the legal title was vested in him, he made an attempt to assign the tax liens to his wife and thereby prevent it from merging into the greater title held by him. When he acquired title to the land by sheriff's deed, the effect of it was to extinguish any liens which he held against the same land. Those liens will be treated

as extinguished and merged in his greater title, his deed.

Appellant James D. Scott paid the tax liens which he was legally bound to pay. This extinguished the lien. The fact that the deed was made to his wife is of no importance. *Klippel* v. *Shields* (1883), 90 Ind. 81, 82, 83. The tax liens of appellant James D. Scott will be treated as extinguished upon receipt of his deed of conveyance, unless there is some equitable purpose to be served in keeping them alive. They will not be kept alive to the injury of one who has a right to have them treated as extinguished. *Bunch* v. *Grave* (1887), 111 Ind. 351, 12 N. E. 514. We have not been able to discover any equitable purpose to be served by keeping these tax liens separate and alive.

We are of the opinion that the court did not err in overruling the demurrer of James D. Scott to the complaint, and that the court was right in entering a personal judgment against him. We also conclude that the trial court reached the correct conclusion as to the cross-complaint of appellant Olive J. Scott.

Judgment affirmed.