## FEDERAL LAND BANK OF LOUISVILLE v. ROBERTSON, Superintendent of Banks et al.—95 S. W. (2d) 317.

Western Section. November 8, 1935.

Petition for Certiorari denied by Supreme Court, June 13, 1936.

Pierce & Fry, of Union City, for appellant.
W. M. Miles, of Union City, for appellees.

KETCHUM, J. On April 26, 1919, G. C. Fowler and his wife, Vallie Fowler, executed a trust deed on a tract of 98⅓ acres of land in Gibson county, Tennesseee, to Walter H. Howell, trustee, to secure the payment of an indebtedness of $3,800 to the Federal Land Bank of Louisville, Kentucky, payable in 68 semiannual installments on the amortization plan in accordance with the amortization tables promulgated by the Federal Farm Loan Board. The payment of said note was guaranteed by the Kenton National Farm Loan Association of Kenton, Obion county, Tennessee, through which said loan was obtained, and the stock of the said G. C. Fowler and wife, Vallie Fowler, in said association, in the sum of $190, was pledged as additional security for the repayment of said note, all in accordance with the provisions of the Federal Farm Loan Act, 1916, 39 Stat., 360, see 12 U. S. C. A., secs. 641-1012, inclusive.

Thereafter by a second deed of trust of date April 17, 1922, the said G. C. Fowler and wife conveyed said tract of land to A. W. Fowler, as trustee, in trust to secure the payment of three certain notes to R. E. Fowler; and three other notes executed by G. C. Fowler with W. L. Fowler, as security, payable to the First National Bank of Kenton, Tennessee, two for $1,250 each, and one for $300, which trust deed was subject to the first mortgage indebtedness of $3,800 in favor of the Federal Farm Land Bank of Louisville.

This second trust deed was foreclosed on December 27, 1924, and said land was conveyed by the said A. W. Fowler, trustee to Sol Shatz, the said sale being made subject to the lien of the prior trust deed in favor of the Federal Land Bank amounting then to $3,608.93. The recited consideration in this deed was $85 per acre for the acreage of 98⅓ acres, "but with the amount of the indebtedness secured in said prior deed of trust to be counted out or deducted therefrom to amount unpaid and yet to be paid thereon of $3608.93, and to be further abated by unpaid taxes for the years 1922, 1923 and 1924, which are a lien on said land and accrued thereon since the execution of said deed of trust, and aggregating the sum of $296.29: and said Sol Shatz having fully complied with the terms of sale by paying into my hands the sum of $4643.11, which includes $190 for Federal Land Bank stock as a part of and relating to said original loan of $3800."

In the habendum clause it is recited that this conveyance was made "subject to the first mortgage lien on said land to secure the Federal Land Bank of Louisville, Kentucky, to amount unpaid and yet to be paid thereon of $3608.93, as of January 1st, 1925."

On January 14, 1925, the said Sol. Shatz executed a document in which he assumed the payment of the unpaid balance to be paid on the mortgage indebtedness owing by G. C. Fowler on said land, and received a certificate that the Fowler stock in the Kenton National Farm Loan Association had been transferred to him, and that he had

been elected to membership in said association. These documents, all on one sheet, are as follows:

"Loan No. 5307.

"To the Federal Land Bank of Louisville, Louisville, Ky.:

"This is to certify that I (or we), for the sum of $8500.00, have purchased the entire tract of land which was mortgaged to you by G. C. Fowler to secure a loan from you in the sum of thirty-eight hundred dollars, and I (or we) have assumed the payment of said indebtedness and have purchased the original shares of stock held by the vendor in the Kenton National Farm Loan Association, and have assumed all liabilities of membership thereunder.

"Dated at Kenton, Tenn., the 14th day of January, 1925.

"[Signed]   Sol Shatz, Signature of Purchaser,

"Kenton, Tenn., Permanent address.

"Witness: A. M. Howell."

"I (or we) certify that the above statements are true, and I (or we) hereby confirm the sale and authorize the Secretary-Treasurer to legally transfer the original shares of stock to the purchaser or purchasers set out above.

"[Signed]   G. C. Fowler, Signature of Seller.

"Witness: A. M. Howell."

"This is to certify that Sol Shatz, having purchased the entire farm of G. C. Fowler, on which there is a mortgage or trust deed to the Federal Land Bank of Louisville in the sum of Thirty-Eight Hundred Dollars, and the stock and the stock interest thereof, the said Sol Shatz has been elected to membership in the Kenton National Farm Loan Association.

"Dated at Kenton, Tenn., the 14th day of January, 1925.

"[Signed]   H. K. Dodson, President.

"Attest: A. M. Howell, Secretary-Treasurer."

"Important: Read carefully and fill in all Above Spaces.

"Loan cannot be transferred unless entire Farm covered by a loan is sold to party seeking to assume loan.

"Purchase price requested in above form means the entire consideration.

"The stock interest of the vendor must be transferred to the purchaser.

"$5.00 transfer fee must accompany this form when same is returned to the Federal Land Bank."

The purchaser, Sol Shatz, paid the $5 transfer fee at the time he signed this instrument.

The semiannual payments of principal and interest due on said mortgage indebtedness to the Federal Land Bank were paid up to and including that due on July 1, 1931, and default was made in the payment of the installment due on January 1, 1932. By reason of this

default the Federal Land Bank of Louisville caused said land to be advertised and sold under its mortgage deed of trust on November 12, 1932, and at said sale it purchased said land for the sum of $1,500. After applying this amount to the payment of the costs of the sale and the taxes for the year 1931, and crediting the balance on the mortgage indebtedness, there remained a balance due on said mortgage indebtedness of $2,070.56, for the recovery of which amount the Federal Land Bank of Louisville files this bill against Sol Shatz and the defendant D. D. Robertson, superintendent of banks, in his capacity as receiver of the Kenton Banking Company, and G. C. Holloman, its liquidating agent.

The bill alleges that on August 12, 1930, the Kenton Banking Company of Kenton, Tennessee, had purchased said farm and had assumed the payment of the unpaid balance then due on said mortgage indebtedness to the Federal Land Bank of Louisville, Kentucky, and a copy of said assumption agreement, similar in form to that executed by the defendant, Sol Shatz, was copied in the bill.

The defendant, Sol Shatz, filed his answer to said bill in which he admitted the execution of the first mortgage deed of trust on said land by Fowler and wife to secure the payment of $3,800 in installments, and set up the execution by them of the second deed of trust above referred to, the foreclosure of the latter trust deed, and the purchase by him of the land therein described, subject to the lien of said first mortgage deed of trust in favor of the Federal Land Bank. He denied, however, that he intended to assume the payment of said first mortgage indebtedness, or that he did in fact assume the payment of it; and averred that said transfer form or assumption agreement was not read to him, and that he signed it ''as a mere formality'' to be gone through in order to effect a transfer of the stock in the Kenton National Farm Loan Association from the former owner, G. C. Fowler, to himself. He averred that he had no intention of assuming said first mortgage indebtedness, and that the trustee's deed from A. W. Fowler, trustee, shows that he did not assume it; and that the recital in said certificate that he had assumed said first mortgage indebtedness was untrue; that there was no consideration for said assumption agreement, and that it was not binding upon him. He averred that if the signing of said certificate constituted an assumption of said indebtedness, it was signed by him by mistake, as it was not his purpose, or the purpose of the Kenton National Farm Loan Association, at whose instance he signed it, that he should assume said indebtedness, but it was signed simply in order that he might acquire the stock of the said G. C. Fowler in said association; and he averred that the act of Congress establishing federal land banks provided that only persons who were members of national farm loan associations could obtain loans from said banks, and required them, in making a

loan, to purchase 5 per cent of the amount of such loan of the stock of such association. He, therefore, filed his answer as a cross-bill, and prayed that said assumption agreement might be set aside and annulled upon the ground that he had.executed the same "by mistake or by accident," and for general relief.

D. D. Robertson, superintendent of banks, in his capacity of receiver of the Kenton Banking Company, and G. C. Holloman, the liquidating agent of said bank, in their answer denied that the Kenton Banking Company had ever acquired title to said land or had assumed the payment of said first mortgage indebtedness, and averred that the statement in the bill that it had done so was untrue; that the original of the "transfer form" was prepared at the instance of the complainant, and while it appears that the name of the Kenton Banking Company had been signed thereto, it also appeared therefrom that its name had been erased. It further alleged that if it was in fact executed on behalf of said bank it was done without authority of the board of directors and the cashier was without authority to execute such an instrument, and that there was no consideration therefor, as the bank had never purchased said land.

The answer also alleged that the said D. D. Robertson, as receiver of said bank, had formally denied liability on said claim by registered letter addressed to J. F. Williamson, attorney for complainant, on January 18, 1933, and that this bill was not filed until July 19, 1933, which was more than six months after said receiver had denied liability on said claim; and he therefore pleaded the statute of limitations of six months which provided that "an action upon a claim so rejected must be brought by the claimant within six months after such service [of notice of rejection], or the same shall be barred." Code, section 5984.

The cause was heard by the chancellor partly upon depositions and partly upon oral testimony under a stipulation so to try it, pursuant to section 10564 of the Code. This was a trial according to the forms of chancery, and the cause is therefore triable de novo here.

The chancellor decreed that there was no consideration for the assumption of the payment by the defendant Shatz of the first mortgage indebtedness owing by Fowler and wife to the complainant, and that complainant had not ratified or confirmed or approved the assumption of said indebtedness by Shatz, and that Shatz had not intended to assume the payment of said indebtedness, and that there was no meeting of the minds of the parties to the effect that Shatz intended to assume said mortgage; and that the counsel for complainant admitted in open court that there was no liability against the other party defendants, and he, accordingly, dismissed the bill at the cost of complainants. From this decree the complainant has appealed to this court and assigns errors.

The first four assignments of error are based upon the action of the court in holding:

"(1) That the Federal Land Bank had not ratified the assumption of said first mortgage indebtedness by defendant Shatz;

"(2) That Shatz never intended to assume said indebtedness, when he had executed a written assumption thereof which had been accepted and approved by the Federal Land Bank;

"(3) That there was no consideration for the assumption of the payment of said indebtedness by Shatz because it appeared from his deed that the purchase price was abated by the amount of said indebtedness; and

"(4) That there was no consideration for the assumption of the payment of said indebtedness, because in order to get the Kenton National Land Association stock he assumed the payment of said debt."

The fifth assignment complains of the action of the court in permitting the defendant Shatz to testify, over the objection of the complainant, that he had not assumed the payment of said first mortgage indebtedness, because his testimony was contradicted by his written obligation assuming the payment of said indebtedness.

These five assignments of error relating to the liability of the defendant Shatz on said assumption agreement will be treated together.

Shatz admits that he signed the assumption agreement, but says that he did not know what was in it. He says he signed it at the instance of Mr. Howell, the secretary of the Kenton National Farm Loan Association, "as a mere formality to be gone through in order to effect a transfer of the stock in the Kenton National Farm Loan Association from the former owner, G. C. Fowler, to himself." He testifies that he is a man seventy years of age, owns a department store at Kenton, owns his home, a gin, ten or twelve farms, that his mental faculties are unimpaired, and that he directs and supervises his business himself. He makes no charge of fraud or undue influence; his only ground for being released of his obligation is that he did not read the document that he signed, and that he was mistaken as to its contents. He will not be permitted to escape liability upon such flimsy grounds. In Berry v. Planters' Bank, 3 Cooper's Chancery Reports, 69, 75, the learned Chancellor says:

"That the petitioner did not read this instrument was his own fault. A person must stand by the words of his contract, and if he will not read what he signs, he alone is responsible. 'It will not do,' says Mr. Justice Hunt in a recent case decided by the Supreme Court of the United States, 'for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are

written. But such is not the law.' Upton v. Tribilcock, 91 U. S., 45, 50, 23 L. Ed., 203, 205.''

Ruling Case Law, vol. 6, p. 624, par. 43, states the rule as follows:

''The courts appear to be unanimous in holding that a person who, having the capacity and opportunity to read a contract, is not misled as to its contents, and who sustains no confidential relation to the other party, cannot avoid the contract on account of mistake if he signs it without reading it. . . . To permit a party, when sued on a written contract, to admit that he signed it, but to deny that it expresses the agreement he made; or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of contracts.''

Among the many cases cited in support of this text is Hale v. Hale, 62 W. Va., 609, 59 S. E., 1056, 1061, 14 L. R. A. (N. S.), 221, at page 226, where it is said:

''Mere ignorance of the contents of an instrument, without more, would not suffice to open the doors of a court of equity, or sustain or defeat an action at law. It would amount merely to a complaint against one's self. It imputes no misconduct or wrong to any one else. If a man sees fit to give away his money or property, or throw it away, or abandon it to the world at large, both law and equity accord him the privilege of so doing. The reckless or negligent execution of a deed or other paper, without knowledge of its contents, is an act of a similar kind. The court cannot, in such case, be asked to lay its hand upon any person and compel him to right a wrong done by him, for there is no wrongdoer.''

The chancellor was in error in holding that Shatz did not intend to assume the first mortgage indebtedness to the complainant bank, in the face of his written obligation of assumption duly signed by him. It is no excuse that he did not read it, or understand its contents.

For the same reason the chancellor erred in permitting the defendant Shatz to testify, over the objection of complainant, that he did not assume the payment of said first mortgage indebtedness. This evidence is inadmissible because it was in direct conflict with his written assumption agreement, and it was, therefore, a plain violation of the parol evidence rule to admit it.

It is next insisted that there was no valid consideration inuring to Shatz for the assumption of said first mortgage indebtedness. The defendant Shatz in his answer avers ''that the Act of Congress establishing the Federal Land Banks provided that only persons who were members of National Farm Loan Associations could obtain loans from said banks, and required them, in making a loan, to purchase 5% of the amount of the loan of the stock of said association;'' and he avers that the assumption agreement was executed by him not for

the purpose of assuming said indebtedness, but for the purpose of effecting a transfer of Fowler's stock in the Kenton National Farm Loan Association to him; and the trustee's deed conveying said land to him recites that in addition to the amount bid by him for said land he paid the further sum of $190 for the transfer of Fowler's stock in said Kenton National Farm Loan Association to him. And in his answer he stated that although he paid $190 for said stock, it was never delivered to him.

The Federal Farm Loan Act, sec. 8, 12 U. S. C. A., chap. 7, sec. 733, provides:

"No persons but borrowers on farm land mortgages shall be members or shareholders of national farm loan associations. Any person desiring to borrow on farm land mortgage through a national farm loan association shall make application for membership and shall subscribe for shares of stock in such farm loan association to an amount equal to 5 per centum of the face of the desired loan, said subscription to be paid in cash upon the granting of the loan. If the application for membership is accepted and the loan is granted, the applicant shall, upon full payment therefor, become the owner of one share of capital stock in said loan association for each $100 of the face of his loan, or any major fractional part thereof. Said capital stock shall be paid off at par and retired upon full payment of said loan. Said capital stock shall be held by said association as collateral security for the payment of said loan, but said borrower shall be paid any dividends accruing and payable on said capital stock while it is outstanding."

And section 771 of 12 U. S. C. A., section 12 of said act, enumerating the restrictions on said Federal Land Bank loans, provides at subsection 6:

"No such loans shall be made to any person who is not at the time, or shortly to become, engaged in the cultivation of the farm mortgaged. In case of the sale of the mortgaged land, the Federal land bank may permit said mortgage and the stock interests of the vendor to be assumed by the purchaser. In case of the death of the mortgagor, his heir or heirs, or his legal representative or representatives, shall have the option within sixty days. of such death, to assume the mortgage and stock interests of the deceased."

The Fowler trust deed assumed by Shatz contained the following provision:

"This deed of trust and the note secured thereby are executed and delivered under and in accordance with the said Federal Farm Loan Act, and are subject to all the terms, conditions and provisions thereof, which Act is made a part hereof the same as if set out in full herein."

Shatz purchased said land with notice of this provision in said trust

deed, and to the end that he might have the benefit of said loan at a low rate of interest, and on easy terms of repayment, purchased Fowler's stock in the Kenton National Farm Loan Association. He was not entitled to the benefit of said loan until he had purchased Fowler's stock in said association; and he was not entitled to purchase Fowler's stock and become a member of the association until he assumed his indebtedness to the Federal Land Bank. In other words, he executed said assumption agreement, and purchased Fowler's stock, in order that he might become the borrower from the Federal Land Bank of the amount which Fowler owed, upon the terms set out in said trust deed.

The extension of the unpaid balance on the $3,800 loan to Shatz, and the transfer to him of Fowler's stock in the association of the par value of $190 constituted a good and sufficient consideration for the assumption by him of the payment of the unpaid balance owing on said first mortgage indebtedness.

It cannot be said that Shatz would have had the right to pay off the installments on said first mortgage indebtedness as they matured, and thereby receive the benefit of said loan, without assuming said indebtedness, because under section 771 of the Farm Loan Act quoted above, "in case of the sale of the mortgaged land, the Federal land bank may permit said mortgage and stock interests of the vendor to be assumed by the purchaser." As said by the court in the case of Federal Land Bank v. Shingler, 174 Ga., 352, 162 S. E., 815, 821: "If the Federal Land Bank may permit, it may also refuse to permit the mortgage and stock interests of the vendor to be assumed." And continuing, the court say that it appears from the foregoing provision of the act, that "Congress intended to empower the bank to veto any attempted assumption of the loan and stock interests of a borrower by a person to whom the borrower might wish to sell the mortgaged farm where the bank prefers not to do business with the proposed purchaser." And in this connection the court point out that under said act "in case of the death of the mortgagor, his heir or heirs, or his legal representative, or representatives, shall have the option within sixty days of such death, to assume the mortgage and stock interests of the deceased," and that this right is accorded to no other persons.

The Shingler Case, supra, and the case of Scott v. Federal Land Bank of Louisville, 92 Ind. App., 249, 175 N. E., 16, are similar in all material respects to the case at bar, and the court in each of those cases held that the execution of the assumption agreement was supported by a valid consideration. To same effect, see, also, First National Bank of Vernon v. Federal Land Bank, 93 Ind. App., 15, 177 N. E., 462.

We hold that there was a valid consideration for the execution of

the assumption agreement by the defendant Shatz. Having reached the conclusion that Shatz is not entitled to be relieved of the obligation of the assumption agreement upon the ground that he did not read it before he signed it, and did not know what it contained; and being further of opinion that said agreement was supported by a sufficient consideration, it results that Shatz is personally liable to complainant on said agreement, and the first five assignments of error will be sustained.

Assignments Nos. 6 and 7 complain of the action of the chancellor in dismissing the bill as to the defendants D. D. Robertson, receiver of the Kenton Banking Company and G. C. Holloman, its liquidating agent, (1) because the Kenton Banking Company assumed the payment of the Fowler indebtedness to complainant; and (2) because the bill was filed within six months after the rejection of said claim.

The bill alleges that the Kenton Banking Company assumed the payment of said indebtedness on August 12, 1930, and the alleged assumption agreement similar in form to that executed by Shatz was copied in the original bill. The answer of Robertson and Holloman, which is sworn to, denies that the bank executed such agreement and alleges that it will appear from the original agreement that the bank's signature thereon was erased. The answer also denies that the said land was ever conveyed to the bank. There was no proof on this issue. The complainant did not offer in evidence the alleged assumption agreement, or give any excuse for its failure to produce it. Holloman in his deposition testifies that the Kenton Banking Company never acquired title to said land and never assumed said indebtedness. Under this proof the chancellor was right in dismissing the bill as to the receiver and liquidating agent of the banking company and the sixth assignment of error will be overruled. This conclusion renders the consideration of the seventh assignment of error unnecessary.

From what has been said, it follows that the decree of the chancellor will be reversed as to the defendant Shatz and affirmed as to the defendants Robertson and Holloman, the receiver and liquidating agent of the Kenton Banking Company. Let a decree, therefore, be entered here in favor of the complainant and against the defendant, Sol Shatz, for $2,070.56 with interest from December 27, 1934, together with the costs of the cause.

Senter and Anderson, JJ., concur.